When Mr. Prousalis pleaded guilty, it was understood that a lawyer representing a company in connection with its SEC filings could be charged with securities fraud for making the statements contained in those filings. That was the rule up until the Supreme Court decided in the Janus decision that the only maker of statements in securities filings with the SEC is the issuer itself. That constituted a fundamental change in law that entitles Mr. Prousalis to relief under a Section 2241 habeas petition, and for that reason his conviction should be vacated. I'd like to begin with the District Court's conclusion that the Janus decision is limited to civil lawsuits. A conclusion that was based on language in the opinion drawn from Central Bank and Stone Ridge, which had emphasized the narrow scope of the private right of action in civil cases. Are you aware of any criminal cases applying the Janus rule? I understand that there are some District Court cases. I can't cite them offhand, but I believe that there have been some follow-up cases. Are they cited in your brief? No, no, Your Honor. We do have SEC enforcement proceedings where the SEC has conceded that the Janus decision would apply there. And in that respect, it's no different from a criminal proceeding because in both cases it's not a private civil suit brought by a private litigant, and so it doesn't invoke the implied private right of action. And so to that extent, the SEC enforcement case is a relevant authority. But the critical point for understanding the Janus decision is that it began with the language of Rule 10b-5. Its analysis started with dictionary definitions of what it means to make a statement. It says, the phrase at issue in Rule 10b-5, to make any statement, is thus the proximate equivalent of to state. It continues, for purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement. And so the Court's analysis makes clear that it is interpreting the language of the rule, not relying exclusively on the narrow scope of a private right of action. The government, in its argument, said, well, that language is ambiguous, so you need to defer to the SEC. In footnote 8, the Supreme Court rejected that and said, the meaning of make in Rule 10b-5 is not, quote, ambiguous. And so as I read the opinion, there's no doubt that it was based in the first instance on the language of the rule, and that the reference of private right of action, Central Bank, and Stonebridge was merely confirmatory of that. Right, but the Court also emphasized the narrow scope that it has to give an implied private right of action, did it not? That is correct, Your Honor, and there are really two aspects of the decision. There's the interpretation of the language of the rule and also this private right of action. But if you look at what the Court's language was, it said that its dictionary interpretation was, quote, further supported by Stonebridge, or that it accords with the narrow scope of the private right of action. So I think the better reading of that passage is that it was an additional reason for the Court's interpretation of the language. And we would submit that the language can't be interpreted differently in civil cases as opposed to criminal cases or SEC enforcement proceedings. And for that reason, we would submit that in criminal cases like Mr. Prusalis, the holding that the maker of a statement is the person or entity with ultimate authority over it, in this case Busy Box, is controlling and forecloses the government's theory that Mr. Prusalis himself could have been the maker of those statements and therefore charged with them. And it is clear from the record in the criminal proceedings that that was indeed the government's theory. The government, in the superseding indictment, alleged that the false statements were contained in the final Busy Box IPO registration statement, that's JA-227. It's such a big leap, I mean, just to follow on what Judge Keenan was saying, it's such a big leap from a Court's refusal to expand on a judicially created implied cause of action. And then say we're going to just take that over to the entirely different context of a legislatively passed criminal statute and constrict that. I mean, it makes sense to say, well, the Supreme Court's not going to expand an implied cause of action. And at the same time, it's not going to constrict an expressed congressionally sanctioned criminal provision. I mean, those, they really are apples and oranges, aren't they? Well, Judge Wilkinson, it's the same provisions that are applicable in both civil and criminal cases. And so to the extent that Janus is an interpretation of the language of the rule, there's no principled basis for distinguishing the two. And I would contrast this with a case like Blue Chip Stamps, which held that there's a purchaser-seller requirement for private civil lawsuits. That by the Court's own admission was an interpretation of the scope of the private right of action, not an interpretation. We'd be the first Court to do this, wouldn't we? The first appellate Court, at a minimum, yes, Your Honor. But I think it follows from the- Are there any district courts that have bought your theory? Your Honor, my understanding is that there are. I can't cite them to the Court at the moment. I can, however, cite the SEC's recognition, as I mentioned earlier, that at least- You're asking us to crawl out on a far limb? I wouldn't submit that it's a far limb. I think that if you look at the very first section of analysis in the Janus decision, it starts with the dictionary definition of make. What does it mean to make a statement? It makes clear that they're talking about that phrase, which the Court later says is unambiguous. To expand Janus this far, it's almost doing away with aiding and abetting liability, isn't it? Not at all, Your Honor. Yeah, because the very definition of a non ... The people that were non-makers of the statements in Janus and were spared from an implied civil cause of actions in a criminal context would be classic aiders and abetters. And so, if you're asking us to ... I think it would come to a surprise that the Supreme Court, that we'd taken Janus and used it to eviscerate aiding and abetting, the whole concept of aiding and abetting a criminal offense. Well, to be clear, Your Honor, we don't believe that this case was presented as an aiding and abetting case. But that's what you are. Well, not at all, Your Honor, because in order for there to be- You're not a maker, but at the same time, you weren't exactly a bystander either. You were up to your eyeballs with a busy box and trying to engage in an inside deal that would enrich yourselves at the expense of the ordinary investor who had no idea this kind of stuff was going on. That's right at the heart of a securities fraud violation. And if that isn't aiding and abetting, assuming you're not a maker, I'm not sure about that, but let's assume you're not a maker, that's a classic aider and abetter. Two responses to that, Judge Wilkinson. The first is- And of course, the aiding and abetting was charged, and I guess you pled to it. Well, with respect, Your Honor, I think that although there are references to 18 U.S.C. Section 2 in the superseding indictment, that's not picked up in the judgment. But more fundamentally, in order for there to be an aiding and abetting offense, there must be an underlying violation, which would mean that busy box, the maker, would have to have committed all of the elements of a primary Rule 10b-5 violation. You're saying there has to be a guilty principle. Right. But there is none here because the allegations of the superseding indictment were that busy box itself were defrauded. Now the solution to that, and this gets actually to the dissent in the Janus decision. The dissenter said this is a real problem because you're narrowing the scope of liability, but maybe the solution is Section 20b of the Exchange Act, which is a puppeteer provision that makes it illegal to do indirectly what you can't do directly. And so, for instance, speaking through someone else. The problem for the government in this case is that they never charged Mr. Broussalas with Section 20b offenses. And so although in future cases there is a solution for what the government perceives to be the problem here, it's not this case. And so for that reason, I don't think that this would be nearing the scope of liability more than Janus itself acknowledged in response to the dissenters. To continue then with what the basis of the allegations were in response to whether this is an aiding and abetting case, as I mentioned there are two references to Section 2, the aiding and abetting statute, in the superseding indictment. But none of the allegations are aiding and abetting allegations. The entire theory is that Mr. Broussalas himself made the false statements. There's an entire section on that. It's JA 229. The government repeats it at 227, 238, 239, 240, 243. All those are incorporated by reference in the later accounts. And then in the plea hearing, the court asks, in order to ascertain whether there's a basis for the plea, whether Mr. Broussalas made the statements in the registration statement. He understood that the registration statement would be seen by investors. And so the entire theory here was that he made those statements, not that he aided and abetting somebody else in making them. And Janus makes clear that that's no longer a valid theory for securities fraud liability. Mr. Martin, what about the Supreme Court's discussion in Janus of the Central Bank of Denver case? Why isn't that cutting against your position on the reach of Janus? Because the court is talking about the differences in private rights of action, the differences in reading the term make with regard to securities enforcement actions, with regard to private right of action. So the Supreme Court is essentially saying that the word make is treated differently or else they would, in terms of the private right of action and the terms of the FCC enforcement. Aren't they saying that? No, Your Honor. So there are two points. The first is that these- Right. Well, why aren't they saying that? Okay. So the- In that language where they say a broader reading of make to include entities without ultimate control of the content of a statement would substantially undermine central bank. And he's saying that the enforcement action may be brought by the SEC but does not constitute a private right of action. Sure. Well, the SEC has a separate enforcement provision in Section 20A, which is not an issue. But the Supreme Court is taking some pains to say that there can be separate treatment of the word make, which is the foundation of your case, as I understand it, that they cannot be different. Actually, I don't read that as about the definition of make. Okay. So Section 20A says- Could you tell me why the Supreme Court isn't distinguishing, saying make can mean different things depending on the type of proceeding? That's what I read here. Sure. So Section 20A provides liability for an individual who substantially participates in a securities fraud. And so that doesn't rely on a definition of make. The maker is still the issuer. It's just that there can be secondary liability for those who substantially participate in an SEC enforcement suit. And so it's not two different definitions of make. It's that there's this overlay enforceable only by the SEC for substantial participation in securities fraud. Well, it's not a different definition. It's just how broadly is it applied. Isn't that right? Well, no. I think that in both cases, maker is defined as the person or entity with ultimate authority over the statement. The Supreme Court, that's the holding in Janus. For purposes of Rule 20B-5, the maker is the person or entity with ultimate authority. In SEC enforcement proceedings, there can also be secondary liability for substantial participation, but that's not applicable here, and there's no 20A allegation here. And so I read the Central Bank discussion there as at most confirming the definition of make in Rule 10B-5, and then distinguishing SEC cases in which there can be broader liability, not by manipulating what make means, but by virtue of the secondary liability. Criminal trial here was suspended, and you pled guilty to, what was it, these three counts?  All right. And the only way that you can avail yourself of the safe harbor under 2241 is to prove that the conduct is no longer criminal. And in order to do that, you have to essentially, to prove it's non-criminal, you have to make the case that the Supreme Court decision in Janus should extend to the criminal realm. That, I mean, when you strip it all away, that's what it comes down to. Yes, Judge Wilkinson. Although I... That's the linchpin of it, that the Supreme Court, in deciding that this 10B-5 civil liability doesn't apply to those who assisted, really meant to extend this to this criminal statute as well. And I think it's really a case of, I don't know why we should be jumping out in front of the Supreme Court on this matter, and skating on this kind of thin ice, when there's all the difference in the world between declining to extend what was an implied right of action under Rule 10B-5, and something which Congress has passed, and which rests upon very traditional principles of criminal law. And no other court has done it, and you're left with what Judge Keenan and I think was rightly concerned about, which was that the Supreme Court, in discussing Central Bank of Denver, which was the whole foundation of Janus, indicated that the foundation of that Janus case lay in the fact that they were dealing with an implied civil right of action. But I think we're being pushed into a breach here, that you're trying to get us to do something very aggressive, where no other court has gone before, and where the Supreme Court has issued all kinds of warning signals, saying that this is limited to an implied right of action under 10B-5. That's the context. With respect, Your Honor, I think that the critical issue is not, does Janus extend to language of Rule 10B-5, or a policy-based limit on private rights of action. There are certain cases, again Blue Chip stamps as the quintessential example, that are policy-based limits on the private right of action. There's no reason why that would extend to criminal cases. But if you view Janus as an interpretation of the language of the rule, and I would submit that the court on at least three occasions says that's what it's doing, then there's no way it can't apply to criminal cases. There's a single rule. If it means what the government, or what the Supreme Court said in Janus, then it means that in civil cases. You're just saying context doesn't matter at law. But the whole legal principle involved here is whether, in the civil context, the idea of court-created law versus the criminal context, where there's a, as far as I can see, it's a perfectly normal and routine and ordinary exercise of Congress's authority to pass criminal statutes, and to define the elements of a crime, and to define the range of sanctions. It's just what you're proposing here is quite aggressive, in my view. I know you can say, oh, we do this and do that, but when you strip it all away, that's what we're essentially being asked to do, is to ignore the context of a prior Supreme Court case. Frankly, that position has reversed, written all over it. Reversed. Actually, with respect, Your Honor, I think you would be affirmed if you wrote that opinion. But what I would say is that the relevant context here is what does it mean, quote, to make any statement, end quote. That's the language of the rule, and the court purported to interpret, quote, the phrase at issue in Rule 10b-5. Now, yes, its conclusion was supported. It accords with the narrow scope of the private right of action, but the language of the rule to make any statement is the same in this case as it was in Janus, and it has to mean the same thing. What about count two, and the fact of 78JB and 78FF, and that the language of those two statutes, with regard to count two, certainly is broader. How does that affect your analysis? Count two is just a straight securities fraud count. I'm not sure what effect we would give to any other provisions. I mean, he was, if you look at the language of the superseding indictment, charged with making a false statement. So you're saying the government can't rely on indirectly, or causes to be made? Well, so the indirectly, indirectly language was also interpreted in the Janus decision, and actually in a footnote, and what it says is that it doesn't undermine the making requirement. It just says once you make a statement, it can be communicated indirectly. That was actually a rejection of the government's position in Janus, and so you still have to be the maker of a statement in order for that clause to apply. If there are no further questions, I see I'm quite over my time. You've got some time reserved. Thank you, Chief Judge Draxler. May it please the Court, Jay Hambrick on behalf of Respondent. Your Honors, in 2004, Thomas Presalis pled guilty to a superseding indictment, charging him with conspiracy to commit securities fraud, wire fraud, and mail fraud, securities fraud including aiding and abetting, and failing to disclose interest as counsel in securities filings including aiding and abetting. The issue before this Court is not whether Janus applies in a criminal case, because that issue, frankly, is irrelevant. The issue is whether the conduct of which he was convicted remains criminal under the In re Jones test, and therefore, whether he can rely on the savings clause. That was the basis for the District Court's decision, and this is at Joint Appendix 556. The District Court wrote, even if the Court found Presalis's argument persuasive that under Janus, he no longer qualifies as a maker of the false statements because he lacked ultimate authority over them, Presalis ignores the fact that he also pled guilty to conspiracy and aiding and abetting. Do you agree that to be guilty of aiding and abetting, there has to be a guilty principle? Absolutely not, Your Honor. Counsel says that the government has no theory of aiding and abetting that survives Janus and cites 18 U.S.C. 2A. Who are you aiding and abetting? The 18 U.S.C. You are under 18 U.S.C. 2B, which I will read to the Court because it's very important. 18 U.S.C. 2B says, whoever willfully causes an act to be done, which if directly performed by him or another, would be an offense against the United States as punishable as a principle. And this Court has held in United States v. Jackson, 608 F. 3rd, 193, that 18 U.S.C. 2B is intended to impose criminal liability on one who causes an intermediary to commit a criminal act, even though the intermediary who performed the act has no criminal intent and hence is innocent of the crime charged. So that case certainly stands for the proposition that you don't need a guilty principle to be convicted of 18 U.S.C. 2B, aiding and abetting. There are two other cases that I think are very important. Do you need to even go that far? I mean, if there's a guilty plea and the guilty plea stands as pled, unless the conduct is no longer criminal and to find the conduct no longer criminal, the only route by which you can find the conduct no longer criminal is if the Court somehow met Janus to leap its implied civil right of action, boundaries, and knock down various criminal statutes, including one to which he had pled. Agreed, Your Honor. And to further that point, he was charged with conspiracy to commit securities fraud, mail fraud, and wire fraud. He offers no objection that Janus in any way affects the conspiracy to commit mail fraud and wire fraud. And it's black-letter law that so long as one object of the conspiracy is valid. He has pled guilty already to securities fraud and to failure to disclose the interest of counsel in registration materials. Now, the only way that the guilty plea can be unraveled is if Janus was meant to inflict some sort of, I don't know, damage of unknown or to inflict damage of some unknown scope and consent on these criminal statutes. And when you read Janus and you read the Central Bank of Denver and everything, the Supreme Court went out of its way to indicate that its discussion is confined to the implied private right of action that was created under Rule 10b-5. And we all know, you know, this Court has expressed a great deal of skepticism about private rights of action and judicial expansion of private rights of action that have never received any kind of congressional imprimatur in the first place. And there's nothing in that discussion that indicates that its distaste for private's right of action was somehow meant to impact adversely Congress's right to define the elements of criminal defenses. That has a sanction that the judicially implied private right of action never had. This, I mean, this is, we would be, I tell you this is a far, far limb that we're asked to crawl out on. Absolutely, Your Honor. And counsel referenced that some district courts may have applied Janus. Counsel didn't cite a single criminal case in his briefs, neither did we. I'm not aware of a single criminal case that applies Janus to, in the criminal context. Certainly not in the context of a decision by a court of appeals. So he is asking you to jump for a field of what Janus says. And Janus is, to say that Janus can be interpreted without considering the context in which it was decided is simply inaccurate, in my opinion. But, again, the point is that Janus, Central Bank said there's no aiding and abetting liability and that decision has largely been extended to conspiracy actions in the civil case. For Central, and what the Supreme Court was doing was basically in Janus saying for Central Bank to have meaning, we need to define what is primary liability. But in the criminal context, the law is clear, as defined by Congress, that you can have liability as a principle, whether you're a primary actor, whether you're an aider and abetter, whether you're a conspirator. So Janus simply does not extend that far. The two other points I wanted to make are- You made it in your argument about the fact that in the middle of that trial, it was suspended and a guilty plea was entered as to those three counts. Presumptively, guilty pleas survive into collateral attacks and into 2241 petitions and 2255 petitions unless something pretty important comes along. And that pretty important thing would be that Janus has somehow meant to reshape the concept of what conduct can be labeled criminal. And I don't find it- The Supreme Court doesn't reference the word criminal once. It doesn't reference criminal cases. But again, so I think it's fair to say that petitioner is asking you to take a gigantic leap to extend Janus to a criminal case. But in addition to that being unsound, you don't need to, because you have aiding and abetting law. Well, first of all, you have conspiracy to commit mail and wire fraud, which he doesn't even contest. So that conduct remains criminal. You also have aiding and abetting. Now, counsel, petitioner's whole position is that Busy Box, its officers and directors, were the makers of these statements under Janus and they didn't have any criminal intent. Well, counsel hasn't established that. Counsel's petitioner took the opposite position at sentencing. But the point is he hasn't carried his burden of proof of demonstrating that Busy Box directors and officers were innocent. But again, it doesn't matter, because under 18 U.S.C. 2B, you can be guilty of aiding and abetting even with an innocent principle. And the two cases I mentioned that I just wanted to point out, because they aren't in our brief, because the whole issue of aiding and abetting wasn't really fleshed out in the briefing, unfortunately. But United States v. Ruffin, 613 F2nd 408 stands for the same proposition that you can be convicted of aiding and abetting with an innocent principle, but it goes a step further. Because in that case, the innocent individual was an employee of an agency that was receiving federal funds. And the court said that it is equally clear that under 18 U.S.C. 2B, one who causes another to commit a criminal act may be found guilty as a principle, even though the agent who committed the act is innocent or acquitted. The addition of the words or another in 18 U.S.C. 2B is therefore significant for present purposes because they render criminally liable a person causing another to commit criminal acts. Where the other, even though innocent, has the capacity to do so and the defendant does not. So applied to this context, what he is saying is, I'm Prisales. I was not a maker because I did not have authority. But I caused the officers and directors to make these misleading statements. So what this case says is that you can take the officers and directors, their capacity as makers, and you can extend that to Prisales. And you can take the officers and directors making the statement, and you can extend that to Prisales. Are you arguing that even if Janus does extend to the criminal realm, it doesn't affect this plea? Correct. Either or. Even if- That's an alternative argument. Correct. Our position is that Janus should not be applied to the criminal context. But even if it does, let me make an- It strikes me that you may need to jump through a lot more hoops or take a lot more twists and turns. If Janus does apply, I think your case becomes more complicated. I mean, you may not, because you have this view of aiding and abetting, and you have this view of conspiracy, and that you only need to conspire for one of the objects, and mail fraud and wire fraud are not securities fraud. But, I don't understand why the straight, straightforward route is to just respect the Supreme Court's decision. In the area and context in which it was rendered. And I think that's what the court expects us to do with its cases. I would agree, Your Honor, and I would agree that Janus should not be interpreted to apply to criminal cases. But as lawyers are often, want to do, we come up with alternative arguments when they're well founded. And in this case, the issue is not whether Janus applies to criminal cases. I mean, that controls the outcome of the case, certainly. But the issue is whether the conduct of which he was convicted remains criminal. How does it affect your analysis that aiding and abetting was not found in the judgment? And it wasn't discussed at the plea hearing either, was it? No, it's contained in the indictment. It's the indictment says Janus and Kirk, who was the CEO of Baron Chase, the investment bank. Right, right, but my question, I understand that it's referenced in the indictment. But I'm saying, does it make any difference to the strength of your argument that it was not discussed at the plea hearing and is not contained in the judgment order? No, it doesn't, in my opinion, because number one, you don't even need to charge aiding and abetting for aiding and abetting to apply. A person can be found guilty whether they're charged, even if aiding and abetting isn't even referenced in the indictment. But I'm talking about- At the plea, what the petitioner is arguing is that the labels changed. No, no, I'm just trying to understand the argument and whether there's a problem in the fact that neither the judgment nor the plea hearing references. No, because In re Jones looks at the conduct. So let's look at the conduct of which he was convicted. If you assume he is not a maker, which he hasn't established in my opinion. But if you assume that, then for the conspiracy, did he have an agreement with Kirk that misleading statements would be contained in the registration statement and were overt acts done? That was all discussed in the plea agreement. That's the conspiracy. On aiding and abetting, the label doesn't matter. If you say Busy Box was the maker and he was simply the facilitator at the end, that's the same as saying he did what he did. He- It doesn't matter what the judgment. No, it doesn't. Because an aider and abetter is punished as a principle. It doesn't- I understand that. It doesn't affect the sentence. It doesn't affect anything. I would also say that the other case that's worth reading is United States v. Margiotta, 688 F 2nd 108, which stands for the same proposition that an aider and abetter under 2B can adopt the capacity of an innocent intermediary. So again, it doesn't matter that if Prusalis was not a maker. But again, we get back to ultimately his argument that he is not a maker under Janus. And it certainly boggles my mind to think that an attorney, when the subject of a misrepresentation is the attorney's own retainer agreement. That the attorney who prepares the documents, that controls the documents, that is dealing with a novice company. And as the judge from the Southern District of New York observed, repeatedly the attorney changes the registration agreements. If you read the, I believe it's a sentencing hearing. She says, in the first registration statement, Prusalis included false information about his retainer agreement. The original management of the company changed it. Then Prusalis changed it back. Then the management changed it. Then Prusalis changed it back to be false. And they went through seven iterations of that. And on the eighth, Prusalis finally said, I talked to the SEC, everything's fine. As a factual matter, how the attorney cannot be deemed to be the one with ultimate authority, because that's what Janus stands for, it's not the capacity or the identity of the speakers, that person with ultimate authority. How that attorney cannot be found to be the one with the ultimate authority is simply beyond me as a matter of primary liability. But then you get into aiding and abetting, conspiracy, etc. Your Honors, unless you have questions, I think I've made the points that I wanted to make. Okay, thank you, Mr. Hamrick. I appreciate your argument. We have no more questions. Mr. Markman. Thank you, Chief Judge Traxler. I'd like to start with the aiding and abetting theory that the government has- Can you start with something else a minute? Of course. Can we step back from this whole thing? I would like to hear him at some point on aiding and abetting, if you don't mind. We can go ahead with your question, but I do want you to come back to aiding and abetting. Go ahead with the Chief Judge's question. Okay, thank you both. The government has trotted out a new theory in this court that had never previously been raised in the litigation that effectively Mr. Pousalis used Busy Box as a marionette to convey his false statements. That, I think, carries the government's waiver on aiding and abetting even farther than it had previously been. Previously, we had established that the government, the judgment didn't refer to aiding and abetting, the plea allocution didn't refer to aiding and abetting, and that the allegations in the case of Busy Box having made a statement not, sorry, Mr. Pousalis having made the allegedly illegal statement not that he aided and abetted someone else. Now, we think that's sufficient to establish that the second two counts can't be affirmed on an aiding and abetting theory. But just to make that even clearer, the government has now advanced a theory that appears nowhere, not in the documents connected to the conviction, not in its brief in this court. It acknowledged that the cases it was trotting out now had never previously been cited. And so we think any attempt to raise this new aiding and abetting theory are waived, in addition to not being contained in the conviction materials. The government also says, well, we, Petitioner, have not established that Busy Box lacked the relevant criminal intent, but that actually is the allegation that the government made in the superseding indictment. The government, the superseding indictment alleges on J. 227 that it was a scheme to defraud Busy Box. It similarly says that Mr. Prasadas failed to disclose to Busy Box, that's J. 234, various aspects of the alleged misstatements. And finally, both on J. 235 and 244, the government alleges that Mr. Prasadas told Busy Box that no additional disclosures were necessary. And so, you know, in our view, under the Landon case that we cite in the brief, there must be underlying criminal conduct in order to support an aiding and abetting charge, and that's exactly contrary to what the government alleges in the superseding indictment. In addition, as I mentioned, to not being aired in the judgment of conviction or, frankly, anywhere else. Judge Wilkinson, I don't know if you want me to come back to your question. No, it's all right. Okay. Um, just as a general matter, then I'd just briefly like to return to, you know, what this case is ultimately about. And Judge Wilkinson, you've asked a number of difficult questions about, should we really be messing with criminal liability? And I would just come back to, you know, in our view, the critical question is not, is this civil or is this criminal? It's whether this is an interpretation of the language of the rule or something else. And if you agree with our reading of Janus that it is about the language of the rule, then we would submit that that has to apply equally in criminal cases. And as in SEC enforcement proceedings, which, as we cite on pages 21 and 22 of our opening brief, courts have applied Janus in SEC enforcement proceedings where there is equally no independent, sorry, no implied private right of action that's being interpreted. Unless there are further questions, we would respectfully submit that the judgment below should be reversed.  Okay. Thank you, Your Honors. Are you court appointed in this case? Pardon? Are you court appointed in this case? No, Your Honor. Okay.
judges: William B. Traxler Jr., J. Harvie Wilkinson III, Barbara Milano Keenan